IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMIYLAH BURNS | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 23-5086 |
| BLAKELEY COOPER, et. al. | : | |

MEMORANDUM

**Judge Juan R. Sánchez**                                                                        **April 1, 2024**

Garnishee Merck, Sharp and Dohme LLC (Merck) moves to dismiss and quash the writ of execution filed by Plaintiff Jamiylah Burns on the monies held in a 401(k) savings plan belonging to Defendant Blakely Cooper, a Merck employee. Because those funds are exempt from garnishment and execution under the anti-alienation provision of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1056(d), the motion shall be granted.

**BACKGROUND**

In 2019, Plaintiff Jamiylah Burns obtained a $75,000 judgment in the Montgomery County (Pennsylvania) Court of Common Pleas against her former husband, Defendant Blakely Cooper, in a defamation action. Pl.'s Mem. Law Opp'n. Mot. Dismiss 2, ECF No. 12. The verdict and judgment were upheld on appeal but Cooper has yet to pay anything on the judgment, claiming he is unable to do so. *Id*. at 1. With accrued interest, Cooper now owes Burns $93,000. *Id*. at 2.

Cooper has been a participant in the Merck 401(k) savings plan since he began working for the company in 2020. *Id*. at 3, 5. Burns contends Cooper has "repeatedly fluctuated his 401(k) contributions" to both his Merck plan and his 401(k) plan with his former employer, Pfizer, Inc., "for the purpose of evading payment of the money owed to [her]." *Id*. at 1-2. "As a result of

1

Cooper's gamesmanship with his 401(k)'s," Burns sought to execute upon both plans and served writs of execution upon Merck and Pfizer[1] pursuant to Pennsylvania law through execution proceedings in the Montgomery County Court. *Id*. at 4; *see also* Writs Exec., ECF No. 1. On November 1, 2023, the state court judge ordered those proceedings to be "held in abeyance pending proceedings to be initiated by Plaintiff to seek execution against Merck US Savings Plan as garnishee." Not. Removal Ex. 2, ECF No. 1 (Order, Nov. 1, 2023 Mont. Cnty. CCP No. 2016-11905). Burns then served Merck with a Writ of Execution and an Amended Writ of Execution on November 21 and December 6, 2023, in accordance with Pennsylvania law. *See generally* Pa. R. Civ. P. Nos. 3101, 3108. Merck removed the garnishment matter to this Court on December 21, 2023. *Id*. Ex. 4.

After removing the action to this Court, Merck (and Pfizer) moved to dismiss and quash the writs asserting the monies in Cooper's 401(k) plans are exempt from garnishment pursuant to ERISA's "anti-alienation provision," 29 U.S.C. § 1056(d)(1).

**LEGAL STANDARDS**

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss a pleading may be filed on the grounds that it "fail[s] to state a claim upon which relief can be granted." To survive such a motion, "a claim to relief that is plausible on its face," and which contains enough facts to

---

[1] Burns' garnishment proceedings against Pfizer, Inc. are filed in a separate action in this district – *Jamiliah Burns v. Blakely Cooper, Erie Insurance Exchange, a/k/a Erie Insurance Company and Pfizer, Inc., Garnishee*, Civ. A. No. 23-5090. While she acknowledges Cooper's "*pre-judgment* contributions are exempt from attachment, garnishment and alienation" under ERISA, Burns nevertheless submits "there remain unanswered questions of fact and questions of law as to whether Cooper's *post-judgment* 401(k) contributions and the fraudulent intent behind same are also wholly exempt under ERISA or Pennsylvania law." Pl.'s Mem. Law Opp'n. Mot. Dismiss 4-5, ECF No. 12. While all of Cooper's contributions to his Merck 401(k) plan were made after Burns secured judgment against him, some of Cooper's contributions to his Pfizer 401(k) plan were made before Burns' judgment, while others were made afterward.

"nudge [the plaintiffs'] claims across the line from conceivable to plausible" must be pled. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In ruling on such motions, Courts must give the factual allegations the presumption of truth and draw all reasonable inferences in favor of the non-moving party. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts, however, do not have to accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. A claim is facially plausible when the facts alleged allow a court to draw a reasonable inference that the defendant is liable. *Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 604 (3d Cir. 2015).

**DISCUSSION**

> Under Federal Rule of Civil Procedure 69(a):
>
> A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution – and in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

The parties do not dispute that the contested funds are contained in an employee benefit plan covered by ERISA. 29 U.S.C. § 1003(a). Section 514(a), the statute's "express preemption provision," states:

> "[e]xcept as otherwise provided . . . the provisions of this title . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) [29 U.S.C. § 1003(a)] and not exempt under section 4(b) [29 U.S.C. § 1003(b)]" (not applicable here).

29 U.S.C. § 1144(a).

"State law" includes "'all laws, decisions, rules, regulations, or other State action having the effect of law, of any State,' and is not limited to state laws specifically designed to affect employee benefit plans." *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 294 (3d Cir. 2014) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47-48 (1987) and 29 U.S.C. § 1144(c)(1)).

3

And "[r]elate to' has always been given a broad, common sense meaning, such that a state law 'relates to' an employee benefit plan . . . if it has a connection with or reference to such a plan." *Id*. (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983)). "A law refers to ERISA if it acts immediately and exclusively upon ERISA plans or where the existence of ERISA plans is essential to the law's operation." *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 88 (2020) (internal quotation marks and citation omitted).

In analyzing whether a state law has a connection with or refers to an employee benefit plan, the Supreme Court has cautioned against "an uncritical literalism that would make preemption turn on infinite connections." *Egelhoff v. Egelhoff*, 532 U.S. 141, 147 (2001) (internal quotation marks and citation omitted). "Instead, to determine whether a state law has the forbidden connection," courts should "look to both the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans." *Id*. (internal quotation marks and citation omitted).

Turning first to the objectives of ERISA, it "was enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (internal quotation marks and citations omitted). Its purpose "is to provide a uniform regulatory regime over employee benefit plans," and ERISA therefore "includes expansive preemption provisions which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (internal citation and quotation marks omitted). Under Section 206(d)(1), "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). With very

4

few exceptions, the alienation or assignment of benefits under a pension plan are thus clearly proscribed.

Qualified domestic relations orders constitute one exception,[2] while a few other exceptions exist for "any offset of a participant's benefits provided under [a plan] against an amount that the participant is ordered or required to pay to the plan if the order or requirement to pay arises out of a conviction for a crime involving the plan," or pursuant to a civil judgment or settlement agreement in connection with an action for violation of the funding requirements and fiduciary obligations with respect to the plan.  29 U.S.C. §§ 1056(d)(4) (A) – (C).  In that latter event, the settlement agreement, judgment, order, or decree must expressly provide for the offset of all or part of the amount required to be paid against the participant's plan benefits.  29 U.S.C. § 1056(d)(4)(B).  And the Supreme Court has made clear that approval of any generalized equitable exceptions to the anti-alienation provision are not appropriate.  *See Guidry Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 376 (1990) (holding "Section 206 reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners . . . even if that decision prevents others from securing relief for the wrongs done them[;] if exceptions to this policy are to be made, it is for Congress to undertake that task.").

Burns argues Cooper's 401(k) contributions were part of a "scheme" which "amounts to fraudulent conveyances subject to relief under Pennsylvania's Uniform Voidable Transactions

---

[2]  Specifically, 29 U.S.C. § 1056(d)(3)(A) states:

> Paragraph (1) shall apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a participant pursuant to a domestic relations order, except that paragraph (1) shall not apply if the order is determined to be a qualified domestic relations order. Each pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order.

Act, 12 PA. CONS. STAT. ANN. § 5101, et. seq.,(PUVTA)[3] and/or 42 PA. CONS. STAT. ANN. § 8124 (outlining exemptions from attachment or execution on a judgment). Pl.'s Mem. Law Opp'n. Mot. Dismiss 1-2. Burns asserts those state statutory provisions are not subject to ERISA preemption because neither one governs "a central matter of plan administration or interfere(s) with nationally uniform plan administration," so as to "completely" preclude her "from seeking appropriate relief in this matter." *Id*. at 6-8. Rather, Burns urges the Court to hold a hearing to determine if Cooper "made the transfer or incurred the obligation with actual intent to hinder, delay or defraud any creditor," *i.e.*, Burns. *Id.* at 7 (internal quotation marks omitted).

Even assuming the PUVTA does not refer or relate to ERISA and does not govern a central matter of plan administration or interfere with nationally uniform plan administration, Burns' arguments nevertheless have no merit. Under the PUVTA,

> A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation:
>
> (1) with actual intent to hinder, delay or defraud any creditor of the debtor; or
>
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> (i) was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

---

[3] This Act was formerly known and cited as the "Pennsylvania Uniform Fraudulent Transfer Act." 12 PA. CONST. STAT. ANN. § 5101(a).

12 PA. CONS. STAT. ANN. § 5104(a).  The Act defines a "transfer" as: "[e]very mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset."  12 PA. CONS. STAT. ANN. § 5301.  In adjusting his monetary contributions to his 401(k) accounts, Cooper did not dispose of or part with an asset or an interest in an asset – he did nothing more than move his money from one place to another.  In short, Cooper did not transfer anything to anyone.  In the absence of a transfer, Burns cannot avail herself of the PUVTA's remedies, and it provides no grounds to disregard ERISA's anti-alienation provision.

Nor does Burns qualify for relief under the Pennsylvania state provision governing exemptions of property of a judgment debtor from garnishment and attachment.  In relevant part, 42 PA. CONS. STAT. ANN. § 8124 provides:

> **(b) Retirement funds and accounts.**
>
> (1)  Except as provided in paragraph (2), the following money or property of the judgment debtor shall be exempt from attachment or execution on a judgment:
>
>   . . .
>
> (ix) Any retirement or annuity fund provided for under section 401(a), 403(a) and (b), 408, 408A, 409, or 530 of the Internal Revenue Code of 1986 . . . the appreciation thereon, the income therefrom, the benefits or annuity payable thereunder, and transfers and rollovers between such funds.  This paragraph shall not apply to:
>
>> (A)  Amounts contributed by the debtor to the retirement or annuity fund within one year before the debtor filed for bankruptcy;
>>
>> (B)  Amounts contributed by the debtor to the retirement or annuity fund in excess of $15,000 within a one-year period.  This shall not include amounts directly rolled over from other funds which are exempt from attachment under this subparagraph.
>>
>> (C)  Amounts deemed to be fraudulent conveyances.

The Merck U.S. Savings Plan Summary Plan Description explains that "[t]he Internal Revenue Service has issued a favorable determination letter on the tax-qualified status of the Savings Plan under Section 401(a) of the IRC and the Plan's status as a cash or deferred arrangement under Section 401(k) of the Code."  Def.'s Mot. Dismiss Ex. 1 at 41, ECF No. 9-3.  Thus, in addition to the protection against garnishment and execution provided under ERISA, Cooper's Merck 401(k) account is similarly exempt under § 8124 of Pennsylvania's Title 42.

Still further, even if Pennsylvania law did not provide for an exemption, § 8124(b) obviously "relates" and/or "refers" to an employee benefit plan.  As such, this provision is indeed preempted under § 514 of ERISA, 29 U.S.C. § 1144(a).  Cooper's Merck 401(k) is thus exempt from execution in satisfaction of Burns' judgment by operation of § 206(d) of ERISA  Merck's motion to dismiss and quash the writs of execution will therefore be granted.

An appropriate Order follows.

BY THE COURT:


/s/  Juan R. Sánchez
_____
Juan R. Sánchez,         J.